## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **CHARLIE POLIN, as the surviving SON, and ADMINISTRATOR OF THE ESTATE of decedent, MARY ANN POLIN,** | **Case No.** |
| 550 South C Street | **Division No.** |
| Poplar Bluff, MO 63901 | |
| | **JURY TRIAL DEMANDED** |
| **Plaintiff,** | |
| **v.** | |
| **PALLADIAN SENIOR CARE OF POPLAR BLUFF, LLC D/B/A OAKDALE CARE CENTER** | |
| Serve Registered Agent: | |
| Business Filings International, Inc. | |
| 120 South Central Avenue, Suite 400 | |
| Clayton, MO 63105 | |
| | |
| **PALLADIAN MANAGEMENT SERVICES, LLC** | |
| Serve Registered Agent: | |
| Business Filings Incorporated | |
| 600 S Second Street Suite 104 | |
| Springfield , IL 62704 | |
| | |
| **Defendants.** | |

## PLAINTIFF'S PETITION FOR DAMAGES

The Plaintiffs, by and through undersigned counsel, submits this Petition for Damages against the above-named Defendants, and in further support, states and alleges as follows:

1

## PLAINTIFFS

1.     Mary Polin ("Resident"), an elderly woman entrusted to the care of Oakdale Care Center,  suffered a devastating hip fractured after falling in her room- a preventable accident that occurred four days after her admission to Oakdale Care Center, a skilled nursing facility located at 2702 Debbie Lane, Poplar Bluff, MO 63901 Poplar Bluff, Missouri ("The Facility).

2.     Resident passed away on July 21, 2023, approximately two months after sustaining the fall and hip fracture that significantly compromised her health and mobility.

3.     Plaintiff, Charlie Polin, is, and always relevant hereto, an adult over the age of 21 and a resident of Missouri.

4.     Plaintiff Charlie Polin is also the duly appointed Personal Representative of the Estate of Mary Polin pursuant to letters issued on July 22, 2024, by the 36th Judicial Circuit Probate Division in Butler County, MO, Case No. 24BT-PR00271.

5.     Plaintiff is a surviving child of Resident, and therefore, a member of the class of individuals authorized to pursue a wrongful death claim pursuant to RSMo. § 537.080.

## DEFENDANTS

6. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

## PALLADIAN SENIOR CARE OF POPLAR BLUFF, LLC D/B/A OAKDALE CARE CENTER ("Operator")

7. Palladian Senior Care of Poplar Bluff, LLC ("Operator") is an Illinois limited liability company.

8. At all times relevant, Operator, was an Illinois limited liability company and owned, operated, managed, maintained, and/or controlled, in whole or in part, and did business as Oakdale Care Center ("Facility" or "the Facility") which is a Missouri licensed nursing home located at 2702 Debbie Lane, Poplar Bluff, MO 63901.

9. As such, Operator was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling the Facility.

10. Consequently, Operator, owed a duty to Resident to use reasonable care for his safety while under its care and supervision at the Facility.

11. Stephen Miller is the sole owner and member of Oakdale Care Center and a citizen of Illinois.

## PALLADIAN MANAGEMENT, LLC, ("MGMT")

12.    At all times relevant to this action, Defendant Palladian Management, LLC, ("MGMT") was an Illinois limited liability company and was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling the Facility.

13.    At all times relevant, MGMT, and/or individuals or entities acting on its behalf, owned, operated, managed, maintained, and/or controlled – in whole or in part – the Facility.

14.    MGMT and/or individuals or entities acting on its behalf operated, managed, maintained, and/or controlled the Facility by providing nursing consulting services and exercising control over:

     a.  Staffing budgets;

     b.  The development and implementation of nursing policies and procedures;

     c.  The hiring and firing of the Administrator; and

     d.  Training and supervising nursing staff persons.

15.    These actions and business decisions had a direct impact on the care provided to all residents including Resident.

16.    Consequently, MGMT, owed a duty to Resident to use reasonable care for Resident's safety while under care and supervision at the Facility.

17.    STEPHEN MILLER is the sole owner and member of PALLADIAN MANAGEMENT LLC and is a citizen of Illinois.

## DEFENDANTS' JOINT ENTERPRISE/VENTURE

18.    Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

4

19.    Defendants Operator and MGMT ("Joint Venture Defendants") were engaged in a joint venture in that:

    a. The Joint Venture Defendants had an agreement, express and/or implied, among the members of the group to operate the Facility, a Missouri licensed nursing home;

    b. The Joint Venture Defendants had had a common purpose to operate the Facility, a Missouri licensed nursing home;

    c. The Joint Venture Defendants had a community of pecuniary interest in the operation of the Facility, a Missouri licensed nursing home; and

    d. The Joint Venture Defendants had had an equal right to a voice in the direction of the operation of the Facility, a Missouri licensed nursing home.

20.    There has always been a close relationship between the Joint Venture Defendants relevant.

21.    Because of the joint venture, the Joint Venture Defendants owed a joint duty to Resident to use reasonable care for their safety while under their care and supervision at the Facility.

## JURISDICTION AND VENUE

22.    Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

23.    The only member of the limited liability company Palladian Senior Care of Poplar Bluff, LLC is STEPHEN MILLER.

24.    STEPHEN MILLER is a citizen of Illinois.

25.    Thus, Palladian Senior Care of Poplar Bluff, LLC is a citizen of the states of Illinois by way of its member being citizens of the states of Illinois.

26.    PALLADIAN MANAGEMENT LLC, is a limited liability company with its sole member being STEPHEN MILLER.

27. STEPHEN MILLER is a citizen of the state of Illinois.

28. Thus, PALLADIAN MANAGEMENT LLC is a citizen of the state Illinois.

29. Plaintiff is is a citizen of Missouri

30. Decedent was a citizen of the state of Missouri at the time of his death.

31. Therefore, Plaintiff brings her claims contained in the Complaint under federal diversity jurisdiction, 28 U.S.C. § 1332(a)(1), as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

32. Pursuant to RSMo § 506.500.1(3), defendants, purposefully availed themselves of the protections and/or benefits of the laws in Missouri by committing tortious acts within the state including, but not limited to, failing to ensure that PALADIAN SENIOR CARE POPLAR BLUFF, LLC had appropriate policies and procedures for its nursing staff, was properly capitalized, funded, staffed, and that staff received adequate training and supervision, thereby making jurisdiction proper in this Court.

33. A substantial part of the events or omissions giving rise to the claims described in the Complaint occurred in this District of Missouri, thereby making venue proper in this Court

34. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

35. Venue is proper in this Court, because the tortious acts complained of occurred in the above-referenced Missouri county pursuant to RSMo. § 508.010.4.

36.     Pursuant to RSMo § 506.500.1(3), defendants Operator, MGMT, BH, and Miller purposely availed themselves of the protections and/or benefits of the laws in Missouri by conducting business in and committing tortious acts within the state including, but not limited to, failing to ensure that that the Facility had appropriate policies and procedures for its nursing staff; was properly capitalized, funded, and staffed; and that staff received adequate training and supervision while Resident was at the Facility, thereby making jurisdiction proper in this Court.

## FACTUAL BACKGROUND

37.     Plaintiffs incorporates by reference the allegations previously set forth and further alleges as follows:

## Defendants' Treatment of Resident

38.     Resident was admitted to the Facility May 25, 2023.

39.     Despite explicitly documenting Residents high fall risk status, acknowledging her history of falls, and recognizing her complete dependence on staff for all mobility and transfers, the Facility catastrophically failed to implement the very safeguards their own assessments demanded.

| Oakdale Care Center (SNF) | | Date Range: 05/25/2023 - 05/30/2023 | |
| Care Plan History - Polin, Mary A  (Full Code) MR # S23-1517-01 | | Display: End Date Snapshot | |
| Problem | Goal | Approach | Discipline |
| *(Continued) Problem Start Date: 05/25/2023 Category: ADLs Functional Status/Rehabilitation Potential Resident: admitted to SNF for skilled care. I require a Baseline Care Plan identifying care needs, risks, strengths and goals within the first 48 hours.* | *(Continued) Long Term Goal Target Date: 08/25/2023 Initial goal is to (discharge to community. I will have access to necessary services to promote adjustment to my new living environment and or post discharge from facility.* | **Approach Start Date: 05/25/2023 SAFETY: I will need to be monitored to prevent falling in my new environment. I will need (assistance with bed/chair mobility), (assistance with transfers), (assistance with locomotion) to prevent falling or injury. I use w/c and need safety reminders to use durable medical equipment safely. Chartable Task in POC: unchecked Include on Profile: unchecked Every Shift; Day Shift 06:00 AM, Evening Shift 02:00 PM, Night Shift 10:00 PM** *Created: 05/27/2023 Debby Hess, LPN* | **CNA, Nursing, Occ. Therapy, Physical Therapy** *Created: 05/27/2023 Debby Hess, LPN* |

40.     Resident was specifically identified as having a history of falls which necessitated enhanced monitoring and preventative measures.

| **Johns Hopkins Fall Risk** | | | |
|---|---|---|---|
| OBSERVATION INFORMATION | | | |
| **Creator:** | Gracie Dugger LPN | | |
| **Observation Date:** | 05/25/2023  04:42PM | **Date Recorded:** | 05/25/2023  04:42PM |
| **Schedule Details:** | Admission | | |
| **Scheduled Date:** | 05/25/2023 | **Due Date:** | 05/26/2023 |
| **Completed Date:** | 05/25/2023  04:43PM | **Completed By:** | Gracie Dugger LPN |
| DESCRIPTION | | | |
| fall risk assessment | | | |
| OBSERVATION DETAILS | | | |

Johns Hopkins Fall Risk

*Check all conditions that apply and then continue with the Fall Risk Score Calculation. Apply Fall Risk Interventions as appropriate for the type of risk.*

**Fall Risk:**
- ⦿ History of one or more falls within the previous 6 months
- ○ No falls within the previous 6 months

41.     Resident required assistance for all forms of mobility, transfer, and ambulation, as documented in her medical chart.

| Mobility: | | |
|---|---|---|
| ☐ No mobility issues (0 points) | ☐ Unsteady gait (2 points) | |
| ☑ Requires assistance or supervision for mobility, transfer, or ambulation (2 points) | ☐ Visual or auditory impairments affecting mobility (2 points) | |

42.     On May 29, 2023, just four days after admission, Resident suffered an unwitnessed fall while in her room when she slid out of her wheelchair despite having been identified as a high fall risk that required assistance with transfers and mobility.

| Unit: | | Attending: | Dr. Donald Piland | | Status: | Discharged | |
|---|---|---|---|---|---|---|---|
| Room/Bed: | | MR #: | S23-1517-01 | | | | |
| **Date** | **Progress Note** | | | **Discipline** | **e-Signed By** | **Observations** | **Events** |
| 05/29/2023 3:51PM | Resident had an unwitnessed fall in resident room. Resident slid out of wheelchair. No injuries noted, no signs of deformity or shortening. Resident helped back to wheelchair by staff. Fall mat in place. ADON, Physician, and | | | LPN | Gracie Dugger LPN | | 05/29/2023 - EVENT - Fall and Investigation |

43.     Following the fall, Resident was in severe pain, and required immediate medical attention.

| 05/30/2023 10:17AM | Pt c/o severe pain in L hip and unable to raise it off the ground when seated. Attempted standing to change brief with pt unable to bear weight.  LLE appears shortened and externally rotated.  Nursing notified and requested xray of L hip. | Occ. Therapy | Rebekah Buchanan OTR/L |
|---|---|---|---|

44.    Imaging confirmed that Resident suffered a left hip fracture as a direct result of the fall.

| | | | |
|---|---|---|---|
| 05/30/2023 4:54PM | Resident sent out to ED with EMS at 1646. Resident has L hip fracture. VS BP 130/74, temp 97.7F, HR 94, Sp02 92% RA, RR 20. Resident's family meeting resident at ED. Report phoned to ED at 1620 to Mallory. Resident POA, physician, DON, and ADON notified of transfer. CCD and copies of x ray results sent with EMS staff. | LPN | Gracie Dugger LPN |

45.    The hip fracture significantly impaired Resident's already compromised mobility, led to additional medical interventions, contributed to on overall decline in her health, and was a substantial factor in her death.

46.    Resident passed away on July 21, 2023.

47.    Upon information and belief, while Resident was a resident at Facility, the staff failed to:

    a.  Properly evaluate or assess Resident's risk of falling;

    b.  Develop an adequate care plan with specific interventions tailored to Resident's fall risk;

    c.  Implement the care plan that called for adequate interventions to prevent Resident from falling;

    d.  Use appropriate assistive devices;

    e.  Provide adequate supervision given Resident's know fall risk and history;

    f.  Monitor or evaluate Resident's care plan to assess the effectiveness of the prescribed interventions; or

    g.  Adjust Resident's care plan to implement new interventions after identifying deficiencies in fall prevention strategies.

48.     Upon information and belief, at no point while Resident was a resident at the Facility did any of the Facility management, including the Administrator, the Director of Nursing, the clinical education coordinator, anybody from Facility, or any other staff member ever provide any sort of in-service training or clinical education to the Facility staff regarding the assessment, prevention, use of interventions, monitoring, and reporting of falls in residents like Resident.

49.     Upon information and belief, at no point while Resident was a resident at the Facility did any of the Facility management, including the Administrator, the Director of Nursing, the clinical education coordinator, anybody from Facility, or any other staff member ever implement the appropriate policies and procedures at the Facility regarding the assessment, prevention, use of interventions, monitoring, and reporting of falls in residents like Resident.

50.     Upon information and belief, while Resident was a resident at the Facility, the Facility did not have an adequate number of staff working daily at the Facility to meet Resident's needs, perform the interventions required to prevent Resident's avoidable fall, or monitor and adequately supervise Resident's condition.

### Undercapitalization/Underfunding at PALADIAN SENIOR CARE POPLAR BLUFF, LLC

51.     PALADIAN SENIOR CARE POPLAR BLUFF, LLC AND PALLADIAN MANAGEMENT, LLC  had a duty to provide financial resources and support to PALADIAN SENIOR CARE POPLAR BLUFF, LLC in a manner that would ensure that each of their residents received the necessary care and services and attain or maintain the highest practicable physical, mental, and psychosocial well-being, consistent with their residents' comprehensive assessments and plans of care.

52.     PALADIAN SENIOR CARE POPLAR BLUFF, LLC AND PALLADIAN MANAGEMENT, LLC  had a duty to provide sufficient financial resources to ensure there was enough properly trained and supervised staff to meet the needs of their residents.

53.     Upon information and belief, PALADIAN SENIOR CARE POPLAR BLUFF, LLC had no autonomy to decide their own financial course, including no authority to determine how much staff they could provide or what resources were available to the staff.

54.     Upon information and belief, no individuals at PALADIAN SENIOR CARE POPLAR BLUFF, LLC are involved in decision making about the financial operations or what its resources were and where they would be spent.

55.     Transactions directed by PALADIAN SENIOR CARE POPLAR BLUFF, LLC AND PALLADIAN MANAGEMENT, LLC  left PALADIAN SENIOR CARE POPLAR BLUFF, LLC with insufficient cash to provide sufficient qualified staff to meet the individual needs of the residents in their PALADIAN SENIOR CARE POPLAR BLUFF, LLC during Resident's time there.

## LEGAL BASIS FOR PALADIAN SENIOR CARE POPLAR BLUFF, LLC AND PALLADIAN MANAGEMENT, LLC'S LIABILITY

### Joint Venture/Enterprise

56.     PALADIAN SENIOR CARE POPLAR BLUFF, LLC and PALLADIAN MANAGEMENT, LLC are collectively referred to herein as the "Corporate Defendants."

57.     The Corporate Defendants directed, operated, and managed the day-to-day functions of their nursing facilities – including PALADIAN SENIOR CARE POPLAR BLUFF, LLC – by developing and implementing policies, practices and procedures affecting all facets of PALADIAN SENIOR CARE POPLAR BLUFF, LLC , including resident care.

58.     These policies manipulate and control the physical and financial resources and prohibit decision making at PALADIAN SENIOR CARE POPLAR BLUFF, LLC  level.

59.     This directly affects resident care by determining things such as what type and quality of nourishment is available for residents; what safety measures may and may not be used depending upon cost; the integrity of the building itself; and most importantly, how much staff is available to provide resident care and how well trained and supervised are the staff to meet the needs of the residents.

60.     These policies and practices were developed and implemented without regard to the needs of the residents and, in fact, mandated the reckless disregard for the health and safety of PALADIAN SENIOR CARE POPLAR BLUFF, LLC residents.

61.    The Corporate Defendants affirmatively chose and decided to establish such operations and demand they be implemented.

62.    Upon information and belief, such operations included, *inter alia*, the following dangerous policies and practices: (a) the aggressive recruitment and admission of high acuity patients to increase the patient census when Defendants had already chosen to understaff PALADIAN SENIOR CARE POPLAR BLUFF, LLC and continually maintain a staff that were not qualified nor competent to provide the care required by state law, regulations and minimum standards of the medical community; and (b) the decision to retain residents whose needs exceeded the qualification and care capability of PALADIAN SENIOR CARE POPLAR BLUFF, LLC staff.

63.    The Corporate Defendants consciously chose not to implement safety policies, procedures and systems which would ensure that: (a) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (b) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

64.    The Corporate Defendants, conduct themselves in a manner which indicates a joint venture/enterprise amongst them, to wit:

      a.  The shared interest in the operation and management of nursing facilities;

      a.  The express and implied agreements amongst them to share in the profits and losses of such venture/enterprise; and

      b.  The obvious actions taken showing the cooperation in furthering the venture/enterprise operating and managing nursing facilities.

65.     Missouri law recognizes a joint venture/enterprise where the parties alleged to be partners in such venture/enterprise share a common interest in the property or activity or the joint venture; maintain agreements, either express or implied, to share in profits or losses of the venture/enterprise; and express actions or conduct showing cooperation in the project of the venture/enterprise.

66.     The Corporate Defendants share a common interest in the operation and management of nursing facilities, including PALADIAN SENIOR CARE POPLAR BLUFF, LLC; maintain agreements to share in the profits or losses of the operation of nursing facilities described herein; and operate daily evincing conduct which indicates their cooperation in the venture of operating and managing nursing facilities for profit.

67.     The Corporate Defendants and PALADIAN SENIOR CARE POPLAR BLUFF, LLC took direct, overt, and specific actions to further the interest of the joint enterprise.

68.     These actions were taken through a joint venture/enterprise or through the Corporate Defendants officers, directors, managers and or employees.

69.     The Corporate Defendants had an equal right to share in the profits and to bear liability for, the joint venture/enterprise.

70.     Further, because the Corporate Defendants were dominated by each other, these entities had an equal right to direct or control their venture, as well as to direct or control the operation and management of PALADIAN SENIOR CARE POPLAR BLUFF, LLC.

### Direct Participation/Individual Actions

71.     The Corporate Defendants were always material to this lawsuit in the business of managing, owning, and operating a network of nursing homes throughout the State of Missouri. One such nursing home was PALADIAN SENIOR CARE POPLAR BLUFF, LLC  where Resident was admitted for care and treatment.

72.     At all times material to this lawsuit, the Corporate Defendants were fully aware that the delivery of essential care services in each of their nursing homes – including PALADIAN SENIOR CARE POPLAR BLUFF, LLC – hinged upon three fundamental fiscal and operational policies which were dictated by their choices on establishing and implementing such policies: (1) the determination of the numbers and expenditures on staffing levels; (2) the determination of the census levels within the nursing home; and, (3) payor mix.

73.     At all times material, the Corporate Defendants made critical operational decisions and choices which manipulated and directly impacted PALADIAN SENIOR CARE POPLAR BLUFF, LLC revenues, and expenditures. More particularly, the Corporate Defendants determined:

   a. The number of staff allowed to work in their chains of nursing homes including PALADIAN SENIOR CARE POPLAR BLUFF, LLC;

   b. The expenditures for staffing at the nursing homes including PALADIAN SENIOR CARE POPLAR BLUFF, LLC;

   c. The revenue targets for each nursing home including PALADIAN SENIOR CARE POPLAR BLUFF, LLC;

   d. The payor mix, and census targets for each nursing home including PALADIAN SENIOR CARE POPLAR BLUFF, LLC

   e. Patient recruitment programs and discharge practices at each nursing home including PALADIAN SENIOR CARE POPLAR BLUFF, LLC.

74.     All cash management functions, revenues and expenditure decisions at the nursing home level – including PALADIAN SENIOR CARE POPLAR BLUFF, LLC – were tightly managed, directed, and supervised by the Corporate Defendants.

75.     It was the choices made by the Corporate Defendants which directly fixed the circumstances in the facilities and the level of care that could, and was, provided at the homes, including PALADIAN SENIOR CARE POPLAR BLUFF, LLC.

76.     The Corporate Defendants formulated, established, and mandated the application and implementation of the policies regarding the staffing levels and expenditures, the census levels, and payor mix.

77.     The census edicts, marketing and admission practices, and resident discharge policies designed and mandated by the Corporate Defendants were implemented and such application was carefully supervised and enforced.

78.     Following the mandates, PALADIAN SENIOR CARE POPLAR BLUFF, LLC functioned in accordance with them, filling empty beds, recruiting high acuity patients, and maintaining a census level and staffing level established and enforced as the Corporate Defendants deemed appropriate.

79.     Accordingly, such manipulation by the Corporate Defendants as to staffing and census were motivated by the financial needs of the Corporate Defendants and PALADIAN SENIOR CARE POPLAR BLUFF, LLC  as opposed to the acuity levels and needs of the residents as dictated by state and federal laws and regulations.

80.    Instead of abiding by their duty to care for the residents, the Corporate Defendants chose to be guided by financial motivation which was simply to increase revenues while restricting and/or reducing expenses.

81.    The Corporate Defendants, therefore, directly participated in a continuing course of negligent conduct, requiring PALADIAN SENIOR CARE POPLAR BLUFF, LLC to recruit and retain heavier care, higher pay residents to PALADIAN SENIOR CARE POPLAR BLUFF, LLC even though the needs of the patient population far exceeded the capacity of staff.

82.    At the same time, the Corporate Defendants chose to design, create, implement, and enforce operational budgets at PALADIAN SENIOR CARE POPLAR BLUFF, LLC which dictated the level of care that could be provided and therefore deprived residents care, creating widespread neglect.

83.    In so doing, the Corporate Defendants disregarded, superseded, and violated the duties and responsibilities imposed on a licensed nursing home, in this case PALADIAN SENIOR CARE POPLAR BLUFF, LLC, by the State of Missouri, and the federal government.

### Corporate Malfeasance

84.    The Corporate Defendants consciously chose not to implement safety policies, procedures and systems which would ensure that: (1) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (2) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

85.     Accordingly, the Corporate Defendants by their operational choices and decision making, and to satisfy their desire to grow profits, created a dangerous condition that caused harm to residents.

86.     These choices to establish and implement such policies and the conscious decision not to implement corrective actions or procedures disregarded the duties which the State of Missouri and federal government imposed upon the Corporate Defendants, and PALADIAN SENIOR CARE POPLAR BLUFF, LLC.

87.     Because the staffs were below necessary levels, and because the staffs that were present were not properly qualified or trained, the residents at PALADIAN SENIOR CARE POPLAR BLUFF, LLC  including Resident, failed to receive even the most basic care required to prevent catastrophic injury and death.  This negligence and resulting injuries ultimately led to and caused Resident's injuries and death as described above.

88.     During Resident's residency at PALADIAN SENIOR CARE POPLAR BLUFF, LLC, Resident sustained physical injuries and died, as described in more detail above, because of the acts, omissions, decisions, and choices made by the Corporate Defendants in operating PALADIAN SENIOR CARE POPLAR BLUFF, LLC.

89. During Resident's residency at PALADIAN SENIOR CARE POPLAR BLUFF, LLC, the Corporate Defendants negligently failed to provide and/or hire, supervise and/or retain staff capable of providing Resident with a clean, safe, and protective environment, and that, because of this failure, Resident suffered neglect, abuse, severe personal injuries, conscious pain and suffering, and deterioration of Resident's physical condition as further described above. Ultimately, Resident died because of this failure.

90. The Corporate Defendants manage, operate, and direct the day-to-day operations of PALADIAN SENIOR CARE POPLAR BLUFF, LLC and these Corporate Defendants are liable for this direct involvement in the operations of such PALADIAN SENIOR CARE POPLAR BLUFF, LLC. These Corporate Defendants are therefore liable to the Plaintiff for the neglect of and injuries to Resident.

91. PALADIAN SENIOR CARE POPLAR BLUFF, LLC, these Corporate Defendants have been named as Defendants in this lawsuit for their individual and direct participation in the torts and causes of action made the basis of this lawsuit, having:

a. Chosen to disregard the duties and responsibilities which PALADIAN SENIOR CARE POPLAR BLUFF, LLC as a licensed nursing home, owed to the State of Missouri and its residents;

b. Created the dangerous conditions described by interfering with and causing PALADIAN SENIOR CARE POPLAR BLUFF, LLC to violate Missouri statutes, laws and minimum regulations governing the operation of said nursing home;

c. Superseding the statutory rights and duties owed to nursing home residents by designing and mandating dangerous directives, policies, management, and day to day operation of PALADIAN SENIOR CARE POPLAR BLUFF, LLC;

d. Caused the harm complained of herein; and

e.  Choosing to disregard the contractual obligations owed to the State of Missouri and the Federal Government to properly care for the residents in exchange for payment of funds for such care.

### COUNT I - (Wrongful Death v. All Defendants)

92.  Plaintiffs incorporates by reference the allegations previously set forth and further alleges as follows:

93.  This Count accrued after the August 28, 2015, effective date of the amendments to RSMo. § 538.210.1. *See Coover v. Moore*, 31 Mo. 574, 576 (Mo. 1862); *Cummins v. Kansas City Pub. Serv. Co.*, 66 S.W.2d 920, 929 (Mo. banc 1933); *Nelms v. Bright*, 299 S.W.2d 483, 487 (Mo. banc 1957); *Boland v. St. Luke's Health System, Inc.*, 471 SW 3d 703 (Mo. 2015) (banc).

94.  At all times material hereto Resident was in a defenseless and dependent condition.

95.  As a result of Resident's defenseless and dependent condition, Resident relied upon Defendants to provide for their safety, protection, care, and treatment.

96.  At the time of the negligent acts and occurrences complained of herein and at all other times relevant hereto, Defendants, and their agents and employees, owed a legal duty to Resident to exercise that degree of skill and learning ordinarily exercised by members of their respective professions under the same or similar circumstances.

97.  At all relevant times, Defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled nursing facility.

98.    These duties required Defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of all residents including Resident.

99.    These duties required Defendants to have sufficient and qualified staff at the Facility nursing home to ensure the proper care for, and treatment of all residents including Resident.

100.    These duties required Defendants to ensure that the Facility' nurses and other staff were properly educated and trained regarding the care for, and treatment of all residents including Resident.

101.    These duties required Defendants to ensure that the Facility was properly capitalized to ensure the proper care for, and treatment of all residents including Resident.

102.    Specifically, during their care and treatment of Resident, Defendants and their agents, servants, and/or employees breached their duties and were guilty of the following acts of negligence and carelessly by failing to measure up to the requisite standard of care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances, including by:

   a.  Failing to assess Resident's fall risk upon admission to the Facility.

   b.  Failing to monitor Resident to prevent them from falling.

   c.  Failing to implement the appropriate fall risk precautions to prevent Resident from falling.

   d.  Failing to ensure Resident was free from neglect.

   e.  Failing to ensure the Facility had the adequate staffing, equipment, and other medical resources necessary to meet residents like Resident's needs with respect to preventing falls.

f.  Failing to implement the appropriate policies and procedures at the Facility for evaluating and assessing the risk of falling in residents like Resident.

g.  Failing to implement the appropriate policies and procedures at the Facility for monitoring residents at risk of falling like Resident.

h.  Failing to implement the appropriate policies and procedures at the Facility to ensure the appropriate fall risk precautions were in place for residents like Resident.

i.  Failing to implement the appropriate policies and procedures at the Facility to ensure the Facility had the adequate staffing, equipment, and other medical resources necessary to meet residents like Resident's needs with respect to preventing falls.

j.  Failing to adequately train or educate the Facility staff about safely transferring residents like Resident, including the use of appropriate equipment and other medical resources necessary to meet residents like Resident's needs with respect to preventing falls.

k.  Failing to oversee and monitor the Facility staff to ensure Resident was safely transferred and to ensure the appropriate equipment and other medical resources necessary to meet residents like Resident's needs with respect to preventing falls were being used; and

l.  Failing to perform and measure up to the requisite standards of care required and observed by health care providers and further particulars presently unknown to Plaintiffs, but which is verily believed and alleged will be disclosed upon proper discovery procedures during this litigation.

103.  As a direct and proximate result of the individual and collective acts of negligence of Defendants as described above, Resident was harmed and suffered damages, including but not limited to medical bills and expenses, pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life; death; and other damages.

104.    As a direct and proximate result of the individual and collective acts of negligence of all Defendants as described above, Plaintiffs, suffered damages including, but not limited to, loss of companionship, loss of comfort, loss of guidance, loss of counsel and loss of instruction, pain, suffering, bereavement, and mental anguish.

WHEREFORE, Plaintiffs, prays for judgment against Defendants in an amount a jury deems fair and reasonable under the circumstances in excess of $75,000, including, but not limited to, medical expenses, actual damages, the costs of this action, and for such other and further relief as the Court deems just and proper.

### COUNT II
### Plaintiff Estate of Mary Polin Negligence Claim — Not Resulting in Death — Against All Defendants

105.    Plaintiffs incorporate by reference all the foregoing allegations in this Petition as though fully set forth herein.

106.    This Count is pled in the alternative to the wrongful death claim.

107.    At all times material hereto Resident was in a defenseless and dependent condition.

108.    As a result of his defenseless and dependent condition, Resident relied upon defendants to provide for his safety, protection, care, and treatment.

109.    At all relevant times, defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled nursing facility.

110.    These duties required defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of all residents including Resident.

111. These duties required defendants to have sufficient and qualified staff at The Facility nursing home to ensure the proper care for, and treatment of all residents including Resident.

112. These duties required defendants to ensure that The Facility's nurses and other staff were properly educated and trained regarding the care for, and treatment of all residents including Resident.

113. These duties required defendants to ensure that The Facility was properly capitalized to ensure the proper care for, and treatment of all residents including Resident.

114. Specifically, during their care and treatment of Resident, defendants and their agents, servants and/or employees breached their duties and were guilty of the following acts of negligence and carelessness by failing to measure up to the requisite standard of due care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances, including:

a. Failing to assess Resident's fall risk upon admission to the Facility.

b. Failing to monitor Resident to prevent them from falling.

c. Failing to implement the appropriate fall risk precautions to prevent Resident from falling.

d. Failing to ensure Resident was free from neglect.

e. Failing to ensure the Facility had the adequate staffing, equipment, and other medical resources necessary to meet residents like Resident's needs with respect to preventing falls.

f. Failing to implement the appropriate policies and procedures at the Facility for evaluating and assessing the risk of falling in residents like Resident.

g. Failing to implement the appropriate policies and procedures at the Facility for monitoring residents at risk of falling like Resident.

h.  Failing to implement the appropriate policies and procedures at the Facility to ensure the appropriate fall risk precautions were in place for residents like Resident.

i.  Failing to implement the appropriate policies and procedures at the Facility to ensure the Facility had the adequate staffing, equipment, and other medical resources necessary to meet residents like Resident's needs with respect to preventing falls.

j.  Failing to adequately train or educate the Facility staff regarding safely transferring residents like Resident, including the use of appropriate equipment and other medical resources necessary to meet residents like Resident's needs with respect to preventing falls.

k.  Failing to oversee and monitor the Facility staff to ensure Resident was safely transferred and to ensure the appropriate equipment and other medical resources necessary to meet residents like Resident's needs with respect to preventing falls were being used; and

l.  Failing to perform and measure up to the requisite standards of care required and observed by health care providers and further particulars presently unknown to Plaintiffs, but which is verily believed and alleged will be disclosed upon proper discovery procedures during this litigation.

115.  As a direct and proximate result of the individual and collective acts of negligence of defendants as described above, Resident suffered severe pain, anxiety, and mental distress.

116.  As a direct and proximate result of the individual and collective acts of negligence of all defendants as described above, Plaintiffs, suffered damages including, but not limited to, pain, suffering, bereavement, and mental anguish.

WHEREFORE, the Estate prays for judgment against defendants in an amount a jury deems fair and reasonable under the circumstances in excess of $75,000, including, but not limited to, medical expenses, actual damages and punitive damages, the costs of this action, and for such other and further relief as the Court deems just and proper.

## **PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully Submitted,

STEELE LAW FIRM II, LLC
***/s/ Dusty Gleason***
Dusty Gleason MO #76301
Jonathan Steele MO #63266
2029 Wyandotte, Suite 100
Kansas City, MO 64108
Ph: (816) 466-5947
Fax: (913) 416-9425
dusty@nursinghomeabuselaw.com
jonathan@nursinghomeabuselaw.com

ATTORNEYS FOR PLAINTIFF


I hereby certify that the below-signed Attorney signed the original of the above and foregoing and is maintaining the original copy at said Attorney's office.

***/s/ Dusty Gleason***
Attorney for Plaintiff